Greenberg v Montefiore New Rochelle Hosp. (2022 NY Slip Op 02194)





Greenberg v Montefiore New Rochelle Hosp.


2022 NY Slip Op 02194


Decided on March 31, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 31, 2022
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick
Troy K. Webber, Ellen Gesmer, Saliann Scarpulla Martin Shulman


Index No. 20340/19E Appeal No. 15299 Case No. 2021-01438 2021-01446 

[*1]Elaine Greenberg, as Executor of the Estate of Gerald Greenberg, Deceased, Plaintiff-Appellant,
v
Montefiore New Rochelle Hospital, et al., Defendants-Respondents. Compassion & Choice, Jennifer Friedlin and Stacy Gibson, Amici Curiae.



Plaintiff appeals from the judgment of the Supreme Court, Bronx County (John R. Higgitt, J.), entered February 16, 2021, dismissing the complaint, and bringing up for review an order, same court and Justice, entered on or about February 9, 2021, which granted defendants Montefiore New Rochelle Hospital and Diego Escobar, M.D.'s CPLR 3211(a)(7) motion to dismiss the complaint.




Lazar Grunsfeld Elnadav, LLP, Brooklyn (Gerald Grunsfeld of counsel), for appellant.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York (Elliott J. Zucker of counsel), for respondents.
Rickner PLLC, New York (Rob Rickner of counsel), for amici curiae.



GESMER, J. 


On a motion to dismiss for failure to state a cause of action pursuant to CPLR 3211(a)(7), courts treat the allegations in the complaint as true (Leon v Martinez, 84 NY2d 83, 87 [1994]). The relevant facts alleged in the complaint are as follows. On December 21, 2011, plaintiff's husband (decedent) executed a health care proxy and a living will (Public Health Law § 2981; 10 NYCRR 400.21). The living will provides that, if decedent has an "incurable or irreversible mental or physical condition with no reasonable expectation of recovery" or is "a) in a terminal condition; b) permanently unconscious; or c) if . . . conscious but ha[s] irreversible brain damage and will never regain the ability to make decisions and express [his] wishes," then he directed that his treatment be limited to measures to keep him comfortable and relieve pain, and specified that he did not consent to cardiac resuscitation, mechanical respiration, tube feeding, or antibiotics. The health care proxy and living will both identify plaintiff as decedent's health care agent to act in accordance with decedent's wishes in the event that he was unable to make his own health care decisions, with their two adult sons designated to act as substitute health care agents. Both documents were properly witnessed and comply with the applicable statutory requirements.
In 2016, decedent was 63 years old, suffering from advanced Alzheimer's disease, residing in a residential treatment facility, and unable to recognize his wife and children or communicate in any meaningful manner. On November 3, 2016, he was admitted to defendant Montefiore New Rochelle Hospital after being found lying on the floor at his residential facility. Hospital staff had copies of decedent's living will and health care proxy. Hospital staff also provided decedent's son, the only health care agent present at the hospital, with a Medical Order for Life-Sustaining Treatment (MOLST) form, which he completed and executed. The MOLST provided that decedent was to receive comfort measures only, and that decedent was not to receive intravenous fluids or antibiotics.
The physician who first evaluated decedent at the hospital determined that he was suffering from sepsis. She noted in decedent's chart under "Advance directives," "DNR; DNI; No tube feeds; No antibiotics; No IV fluids . . .[*2](refer to MOLST form)." The examining physician contacted plaintiff by telephone, who confirmed that these directives were correct and also verbally directed that decedent was not to receive interventional medical treatment, including antibiotics, and that he was only to be provided with measures to alleviate pain, so that his suffering would end as quickly as possible.
Shortly after the first physician completed her examination, the attending physician, defendant Dr. Escobar, examined decedent. Dr. Escobar noted that decedent's hospital record indicated that he was not to receive antibiotics or intravenous fluids, and that there was a MOLST in place, executed just the day before. Nevertheless, on November 4, 2016, Dr. Escobar directed that decedent be treated with intravenous antibiotics and ordered a brain CT, chest X ray, ECG, blood tests, and the administration of other medications that were not necessary to alleviate pain.
Plaintiff has retained an expert who opines that, had decedent not received treatment contrary to decedent's wishes and his health care agents' instructions, he likely would have died from sepsis within a few days. Instead, decedent endured pain and suffering over a period of approximately 30 days, until he died on December 5, 2016.
Plaintiff filed this medical malpractice action on January 9, 2019. The complaint alleges that defendants departed from the standard of care by failing to abide by decedent's wishes expressed in his advance directives, the directives of his health care agents, and the MOLST, and, as a result, decedent endured pain and suffering for over a month.
On October 21, 2020, defendants moved to dismiss the complaint for failure to state a cause of action. Their sole argument before the motion court was that plaintiff's claim is one for "wrongful life," and is thus disallowed under Cronin v Jamaica Hosp. Med. Ctr. (60 AD3d 803 [2d Dept 2009], lv granted 12 NY3d 715 [2009], appeal withdrawn 13 NY3d 857 [2009]). As there was no binding precedent from this Department, the motion court found that it was bound to follow Cronin (see D'Alessandro v Carro, 123 AD3d 1, 6 [1st Dept 2014]) and granted the motion. We now reverse.
At the outset, I note that, in Cronin, it appears that plaintiff sought damages based on a claim "that the defendant wrongfully prolonged the decedent's life by resuscitating him against the express instructions of the decedent and his family" (Cronin, 60 AD3d at 804). In contrast, here, plaintiff seeks damages for decedent's pain and suffering, which the complaint alleges was the result of medical malpractice in that defendants breached the standard of care by administering treatments without consent and in direct contravention of decedent's wishes expressed in his advance directives as reaffirmed by his health care agents and in the MOLST. Defendants do not address these allegations at all, arguing only that plaintiff asserts a "wrongful life" claim like the one asserted in Cronin[*3]. Since I find that plaintiff has adequately stated a medical malpractice claim that is not barred by Cronin, defendants are not entitled to dismissal of the complaint.
In any event, this Court is not bound by Cronin (see D'Alessandro, 123 AD3d at 6), and I find that the reasoning in that case, and in the Court of Appeals cases on which it relies, do not apply here. The award of summary judgment to defendant in Cronin was based on the Second Department's determination that "the status of being alive does not constitute an injury in New York" (60 AD3d at 804), based on its citation to Alquijay v St. Luke's-Roosevelt Hosp. Ctr. (63 NY2d 978, 979 [1984]) and Becker v Schwartz (46 NY2d 401, 412 [1978]). In each of those cases, the Court of Appeals dismissed causes of action, made on behalf of infants, which alleged that, "had plaintiffs been properly advised by defendants of the risks of abnormality, their infants would never have been born" (Becker, 46 NY2d 401, 410; see also Alquijay, 63 NY2d at 979). The holdings in Becker and Alquijay rely on two premises, neither of which is applicable here.
First, the Court of Appeals stated that there is no precedent recognizing "the fundamental right of a child to be born as a whole, functional human being . . . ." (Becker, 46 NY2d at 411 [internal quotation marks omitted]; see also Alquijay, 63 NY2d at 979). However, in contrast, a competent adult's right to refuse medical treatment, even where refusal may result in death, is well established by case law (see Cruzan v Director, Missouri Dept. of Health, 497 US 261, 281 [1990]; Myers v Schneiderman, 30 NY3d 1, 14 [2017]) and statute (see Public Health Law article 29-C [health care proxies]; Public Health Law article 29-CCC [non hospital orders not to resuscitate]; 10 NYCRR 400.21 [advance directives]).
Second, the Court found that the type of claim at issue in Becker and Alquijay is unsuited to judicial determination, since "a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence" (Becker, 46 NY2d at 412; see also Alquijay, 63 NY2d at 979) and because "[w]hether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians" (Becker, 46 NY2d at 411). In contrast, courts can and regularly do determine damages for pain and suffering. Moreover, when a competent adult has executed advance directives specifying the conditions under which they refuse certain life-sustaining treatments, and there has been a medical determination that those conditions are present, no philosophical guesswork is required as to what is best for such a patient. Accordingly, I find that the holdings in Becker and Alquijay do not bar plaintiff from proceeding with the medical malpractice claim set forth in the complaint [*4]on the theory that the failure to follow decedent's directives was a departure from the standard of care.
Accordingly, the judgment of the Supreme Court, Bronx County (John R. Higgitt, J.), entered February 16, 2021, dismissing the complaint, and bringing up for review an order, same court and Justice, entered on or about February 9, 2021, which granted defendants Montefiore New Rochelle Hospital and Diego Escobar, M.D.'s CPLR 3211(a)(7) motion to dismiss the complaint, should be reversed, without costs, the judgment vacated, and the appeal from aforesaid order should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment, Supreme Court, Bronx County (John R. Higgitt, J.), entered February 16, 2021, dismissing the complaint vacated, the complaint reinstated and the appeal from the order, same court and Justice, entered on or about February 9, 2021, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Gesmer, J. All concur.
Kapnick, J.P., Webber, Gesmer, Scarpulla, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 31, 2022